09-CV-00108-CJA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| Lance P. McDermott, *Pro Se*, | ) No. C09-1008-RAJ, |
| Plaintiff, | ) Motion to Amend Complaint |
| vs. | ) |
| | ) FRCP 15(d) Supplemental. |
| John P. Potter, Postmaster General, United States Postal Service, *Et Al*, | ) Noted for Consideration on 28 May 2010. |
| Defendants. | ) |

FILED ENTERED
LODGED RECEIVED

MAY 13 2010

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
DEPUTY

I Motion the Court to amend my original Complaint with supplemental pleadings to show additional discrimination and retaliation events that have occurred since after the filing of the original action, Giglio v. Konold, 5 Ohio App.2d 250, 214 N.E.2d 806, 808 (1965).

1. **Discipline** - On or about 13 January 2010, USPS Senior (Seattle District) Maintenance Manager of Operations (MMO) Jim J. Norris was in the Kent Priority Mail Annex (PMA) facility that I work in. I was cutting metal on the band saw and Mr. Norris was walking by with Mail Processing Equipment (MPE) Mechanic Brenda Burke. I heard him say to Brenda that – "I heard that when the dam (Howard Hanson) breaks there will be a 13 foot wall of water coming down the Green River. Do you know what the emergency plan is?" I asked if he knew what the emergency plan is. He said no. I then told him that he should not be telling employees a 13 foot wall of water could be coming down the river. He asked me why I was angry about him asking questions. I replied that I was not angry about the questions. I told him that I was angry about – "Management spreading false rumors and causing needless fear." I had just finished cutting the piece of metal and turned to throw the extra piece in the scrap metal bin when Mr. Norris asked why I was - "walking away from him." He then told me he wanted to talk to me in the Maintenance Office and to go get a Union Steward. I went over to Brenda a Union Maintenance Steward, who had hobbled away on her walker (on-the-job injury) when Mr. Norris had starting to talk to me. I told Brenda that Mr. Norris wanted to talk with me in the office and he told me to

Motion to Amend C09-1008-RAJ - 1

1  get a Union Steward. I asked her if she could come to the office with me, she said yes, and she
2  walked (hobbled) with me to the Maintenance Office.
3      Mr. Norris started the Official Discussion about showing him "dignity and respect". He said
4  that he had gone to other postal facilities and had asked questions without any problems. He
5  talked about asking questions of Employees at the Processing & Distribution Center (P&DC)
6  also by the River. He said that he heard about a back-flow valve on the storm drain to stop the
7  river from backing-up into the P&DC from a maintenance employee there. He said that he had
8  contracted out the installation of the valve for $15,000 without naming the employee he got
9  (stole) the idea from. This made me angrier because MMO Dave Hoff stole my idea about
10 upgrading the Tray Management System (TMS) Trolleys (Complaint page 95) and contracted it
11 out. USPS Maintenance Support Center's Bart McIntosh stole my idea to fix a problem with a
12 reoccurring broken part on the Small Parcel & Bundle Sorter (SPBS) (Complaint page 117) and
13 contracted it out.
14     He went on talking about how he had been promoted from Mechanic to Supervisor and
15 Maintenance Manager before recently coming to Seattle. I talked about my maintenance
16 experience as a Maintenance Control Officer in a Direct Support Battalion with the Washington
17 State Army National Guard (retired). I told him that as an Officer in a Rear Area Operations
18 Center (RAOC) Support Unit (activated for Desert Storm) that I had coordinated local emergency
19 procedures and contingency plans with the Pierce and King County Emergency Operations
20 Centers (EOC). I also told him that I recently attended a meeting at the Harrison House Senior
21 Living Center in Kent where my Mother lives. The meeting was about the Howard Hanson Dam
22 repairs and the possible flooding if it failed. It was attended by the City of Kent Mayor Suzette
23 Cooke who also spoke. A presentation was given by a FEMA Employee and a King County
24 EOC Manager who both said if the dam totally collapsed the water would take 8 hours to reach
25 Kent and the flood water in Kent would only be about 1 foot deep. Mr. Norris agreed that I had

been better informed about the flooding. He asked that next time he talked to me in the future that I reply to him with dignity and respect. I asked that he not talk to me in the future.

Official Discussions with a Union Steward present are used as first level discipline actions in the Postal Service that can lead to up to removal of employees.

2. **Retaliation** - Shortly after the Official Discussion discipline meeting Mr. Norris issued a Memo, 22 January 2010, Subject: Maintenance Workforce Realignment Priority Mail Annex (Amendment exhibit 174). Mine is the first bid that Mr. Norris proposed to change and Brenda's is the second bid to be changed. This "change" would require all maintenance employees to re-bid for these new positions. This means that I would probably lose my weekends off or my bid in the small PMA facility where I fled from to from the retaliation and discrimination I received in the large P&DC facility.

On or about 1 February, I was asked by the Seattle local American Postal Workers Union (APWU) President Jesse Gobunquin and the Maintenance Craft Director Jimlim Scott to attend a meeting February 9, 2010, with MMO Norris about the proposed changes because "I knew what was going on". I asked Mr. Norris at the meeting if he had worked with the PMA Maintenance Supervisor Bob Hoffman or the District Complement Coordinator Dr. Picard to develop the changes. He said no and that he had only talked to the PMA Operations Manager Greg Ramig. He also said that the Operations Manager told him about the trouble with maintenance response time coverage for equipment that broke down when processing mail. On further questioning Mr. Norris admitted that Operations had only complained about coverage for Swing Tour 3 and Graveyard Tour 1. Mr. Norris' change does not address the Graveyard Tour 1 problems and Day Tour 2 did not have any coverage problems that needed fixing. Mr. Norris deferred his final decision about the schedule changes until after 23 March 2010. As of, 11 May 2010, he had not issued a final decision.

3. **Discrimination** - On or about 18 February 2010 MMO Jim J. Norris issued a Memo, 18

1 February 2010, Subject: Requests for Supervisory Detail Assignments (Amendment exhibit 175) that was posted on the bulletin board(s) and handed out in employee stand-up talks where I received one. The Promotion Requirements differ greatly from the Standard Requirements for Maintenance Supervisor Positions and does not have an Opening or Closing Date. Complaint Exhibit 23, 19 February 2006, Vacancy Announcement has "Knowledge" and "Ability" requirements mailed to the Manager of Human Resource where Mr. Norris' requires other "criteria" be sent to him. Complaint Exhibit 88, 10 November 2007, Maintenance Special Posting only requires interested employees to forward "Application Package" with a Letter of Interest and their current PS Form 991. Further, Mr. Norris requires employees to provide "Supervisor Recommendations". Every Employee (almost) of a Federal Agency knows that it is unlawful, unethical, and discriminatory to use their Federal Position to recommend anyone for Federal Job or Promotion.

I therefore also Motion the Court to allow me name USPS Senior Maintenance Manager of Operations Jim J. Norris to the Complaint and Serve him a Summons with a copy of the Amended Compliant.

Dated this 11 day of May, 2010,

*[signature]*
Lance McDermott, *Pro Se,*
1819 So 104 St
Seattle, WA 98168
Home - 206 763-6268
Cell – 206 331-1990